CLEVELAND BAR ASSOCIATION *v.* McNALLY.

[Cite as *Cleveland Bar Assn. v. McNally,*
109 Ohio St.3d 560, 2006-Ohio-3258.]

(No. 2006–0062—Submitted March 15, 2006—Decided July 12, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Thomas G. McNally of Rocky River, Ohio, Attorney Registration No. 0033842, was admitted to the practice of law in Ohio in 1978.

{¶ 2} On April 28, 2005, relator, Cleveland Bar Association, charged respondent in a six-count amended complaint with professional misconduct. Respondent was served the amended complaint but did not answer, and relator moved for default pursuant to Gov.Bar R. V(6)(F)(2). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion as to five of the six counts and made findings of misconduct and a recommendation, which the board adopted.

## Misconduct

{¶ 3} The first two counts alleged that the respondent had committed misconduct while representing David and Angela Westley and that he had failed to assist in the investigation of the Westley grievance. The third and fourth counts alleged that respondent had committed misconduct while representing Ann Nolan and that he had failed to assist in the investigation of the Nolan grievance. The fifth and six counts alleged that respondent had committed misconduct while representing Shahabuddeen A. Hakeem and that respondent had also failed to assist in the investigation of that grievance.

### Counts I and II

{¶ 4} Relator was eventually unable to locate the Westleys after they filed their grievance, and this failure prevented relator from filing their sworn or certified testimony as proof with the motion for default. The board found the evidence insufficient to prove the misconduct charged in Count I, citing *Dayton Bar Assn.*

*v. Sebree,* 104 Ohio St.3d 448, 2004-Ohio-6560, 820 N.E.2d 318. Relator has not objected to this finding.

{¶ 5} As to Count II, however, the board relied on an affidavit from relator's investigator and exhibits to find a violation of Gov.Bar V(4)(G) (requiring a lawyer to cooperate in a disciplinary investigation). The Westleys filed their grievance with relator in November 2002, and in February 2003, relator's counsel sent a certified letter requesting respondent's written response. Respondent received the letter but did not write back.

{¶ 6} On March 7, 2003, relator's counsel sent another letter, this time asking for a response to the Westley grievance by March 21, 2003. Several days after the response was due, respondent called and promised to mail his reply that evening. He also said that the Westleys had agreed to withdraw their grievance. Respondent never provided the promised response. Moreover, on April 1, 2003, the Westleys reported that they did not want to withdraw their grievance even though respondent had refunded a disputed $150 fee and had demanded that they do so.

{¶ 7} On April 10, 2003, an investigator to whom relator had referred the cause wrote again to respondent, asking for a response to the grievance. A week or so later, respondent telephoned the investigator and advised that he had refunded all of the Westleys' money and represented again that they wanted to dismiss their grievance. In May 2003, Mrs. Westley reiterated that she and her husband did not want to withdraw their grievance, so the investigator asked respondent in another letter to respond. He never did.

### Counts III and IV

{¶ 8} Respondent had previously assisted Ann Nolan with some estate planning, and in September 2002, she engaged him to file an action to partition property she co-owned in Avon, Ohio. At that time, respondent told Nolan "not to worry" about his fee because her case would likely require little more than filing a short complaint in court and a few telephone calls. Respondent and Nolan did not sign a written fee agreement.

{¶ 9} Respondent filed a two-page complaint in November 2002, the defendant answered, and the parties' counsel later attended a case-management conference in February 2003. In May, 2003, the parties settled the case with the defendant's payment of $55,429 to Nolan and an entry dismissing the cause. After the dismissal, Nolan expected to receive an invoice in the mail itemizing the cost of respondent's services. She did not.

{¶ 10} Instead, respondent appeared at Nolan's home to collect a fee of $5,500, approximately ten percent of the settlement amount. Respondent said that this figure represented a discount of his normal fee. Respondent further asked Nolan

to write him two checks—one for $700 that he would give to his wife for "household expenses" and the other for $4,800. Nolan was too intimidated to question respondent's billing tactics and paid him as directed. Respondent endorsed both checks and later deposited them in separate accounts. Respondent has since ignored Nolan's telephone requests for an itemized bill.

{¶ 11} The board found that respondent's $5,500 fee and refusal to account for his services violated DR 2-106(A) (prohibiting a lawyer from charging a clearly excessive fee) and 9-102(B)(3) (requiring a lawyer to maintain complete records and render appropriate accounts).

{¶ 12} The board also found that respondent had violated Gov.Bar R. V(4)(G) by failing to cooperate in the investigation of Nolan's grievance. On December 30, 2003, relator's counsel sent a certified letter asking for respondent's written response to Nolan's allegations by January 13, 2004. Respondent received the letter but did not reply. On January 14, 2004, relator sent another letter asking for a written response, and respondent again did not reply. Respondent also received but did not reply to a certified letter sent by relator's investigator on February 29, 2004.

### Counts V and VI

{¶ 13} On May 21, 2004, Shahabuddeen A. Hakeem paid respondent $382 to begin divorce proceedings on his behalf, promising to pay another $250 once the court scheduled a hearing date. Hakeem thereafter telephoned respondent numerous times to learn the date of his hearing, but respondent never returned any of Hakeem's calls. Hakeem was able to speak with respondent on two occasions—once when respondent picked up his office receiver to make a call and was immediately connected to Hakeem as Hakeem dialed in, and once when respondent, unable to identify Hakeem as the caller, answered his cell phone.

{¶ 14} On both occasions, respondent assured Hakeem that he had filed Hakeem's divorce petition and that no hearing had been set. Respondent explained that the hearing could not take place until Hakeem's wife received notice of the proceedings and that this process sometimes took a long time. After several months, Hakeem contacted the court and learned that his petition for divorce had never been filed.

{¶ 15} For his neglect and other improprieties in Hakeem's case, the board found that respondent had violated DR 1-102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (prohibiting conduct that is prejudicial to the administration of justice), 1-102(A)(6) (prohibiting conduct that adversely reflects on the fitness to practice law), 6-101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), 7-101(A)(1) (prohibiting a lawyer from intentionally failing to seek a client's lawful objec-

tives), 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of employment), and 7–101(A)(3) (prohibiting a lawyer from intentionally causing prejudice or damage to his or her client).

{¶ 16} Because respondent did not respond to relator's investigative inquiries about Hakeem's grievance, the board also found a third violation of Gov.Bar R. V(4)(G). Hakeem filed his grievance with relator on October 21, 2004. In late November 2004, relator sent a certified letter asking for respondent's written response by December 6, 2004. Respondent did not reply. Relator sent another letter on December 9, 2004, this time requesting a response by December 23, 2004. Respondent again did not reply. In January 2005, an investigator sent letters to respondent's home and business addresses and also left discrete voice-mail messages urging him to respond to Hakeem's grievance. He never did.

## Recommended Sanction

{¶ 17} In recommending a sanction for this misconduct, the board weighed the mitigating and aggravating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). In mitigation, the board found that respondent lacked a record of prior discipline. See BCGD Proc.Reg. 10(B)(2)(a).

{¶ 18} In aggravation, the board found that respondent had committed his misconduct with a dishonest motive and that his actions represented a pattern of misconduct and multiple offenses. See BCGD Reg. 10(B)(1)(b), (c), and (d). The board also found respondent's lack of participation in the disciplinary process to be an aggravating factor, noting that he had falsely represented that the Westleys wanted to withdraw their grievance. See BCGD Proc.Reg. 10(B)(1)(e) and (f). Moreover, respondent did not acknowledge the wrongfulness of his misconduct, and he took advantage of vulnerable clients—Nolan was terminally ill and Hakeem was involved in a domestic-relations dispute—without accounting for or returning unearned fees. BCGD Proc.Reg. 10(B)(1)(g), (h), and (i).

{¶ 19} Relator proposed that respondent be permanently disbarred for his misconduct. The master commissioner recommended a more lenient sanction—an indefinite suspension of respondent's license to practice law. The board adopted the recommendation of indefinite suspension. Relator has not objected to this recommendation.

## Review

{¶ 20} We adopt the board's findings that respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 2–106(A), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), 7–101(A)(3), and 9–102(B)(3), and Gov.Bar R. V(4)(G). Moreover, because an indefinite suspension is generally appropriate when these disciplinary violations

are established, a lawyer has ignored the disciplinary process, and few mitigating factors exist, *Columbus Bar Assn. v. Moesle*, 106 Ohio St.3d 475, 2005-Ohio-5517, 835 N.E.2d 1259, ¶ 9, we also adopt the recommended sanction.

{¶ 21} Respondent is therefore indefinitely suspended from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

O'DONNELL, J., not participating.

---

Jones Day, John Q. Lewis, and Cedar R. Holmgren, for relator.